IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARLYN PHILLIPS                          :
                                         :        CIVIL ACTION
            v.                           :
                                         :        NO. 12-1058
TRANSUNION, LLC, ET AL.                  :


**SURRICK, J.**                                    **APRIL __25__, 2012**

### MEMORANDUM

Presently before the Court is Defendant Transunion, LLC's Motion for Judgment on the

Pleadings Pursuant to Rule 12(c).  (ECF No. 14.)  For the following reasons, Defendant's Motion

will be granted.

**I.      BACKGROUND[1]**

**A.      Nature of Action and the Parties**

This is an action brought by a consumer for alleged violations of the Fair Credit

Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").  (Compl. ¶ 1, Not. of Removal Ex. B, ECF

No. 1.)  Plaintiff is an individual who resides in Warminster, Pennsylvania.  (*Id.* at ¶ 2.)

Defendant is a credit bureau that has a place of business in Chicago, Illinois.  (*Id.* at ¶ 3.)

**B.      Plaintiff's Prior Action Against Defendant**

On May 9, 2010, Plaintiff wrote Defendant a letter, in which she disputed "derogatory

---

[1] Pursuant to Federal Rule of Civil Procedure 12(c), all factual allegations, and reasonable inferences to be drawn therefrom, are viewed in the light most favorable to Plaintiff Marlyn Phillips, the nonmoving party.  *See Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) ("In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party.") (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).

information on [her] credit report" with respect to an account ending in "1602" ("1602

Account"). (2011 Pa. Compl. ¶ 13 & Ex., Def.'s Answer Ex. E, ECF No. 4.) Plaintiff asserted

that the stated amount that was allegedly owed to a company called "Cavalry Portfolio

Services/Bank of America" was "excessive and inflated." (*Id.*) On May 18, 2010, Defendant

sent Plaintiff a document, stating that its investigation of the dispute was "now complete" and

listing the results of the investigation. (*Id.* at ¶¶ 14-15 & Ex.)[2] On July 26, 2010, Plaintiff wrote

Defendant a letter, in which she requested the method of verification that was used to verify the

1602 Account. (2011 Pa. Compl. ¶ 16 & Ex.) On August 24, 2010, Defendant stated, in writing,

that its investigation of the dispute was "now complete" and listed the results of the

investigation. (*Id.* at ¶ 17 & Ex.)[3] On January 13, 2011, Plaintiff requested the method of

---

[2] The "Investigation Results" listed the 1602 Account as an "Adverse Account" with an original amount of $10,901 and an outstanding balance of $12,125. (2011 Pa. Compl. ¶¶ 14-15 & Ex.)

[3] Both the May 18, 2010 document and the August 24, 2010 document contain identical form language ("Form Language"), which states, in relevant part:

> Our investigation of the dispute you recently submitted is now complete. The results are listed below. If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the corrected status at the time of investigation.

> If our investigation has not resolved your dispute, you may add a 100-word statement to your report . . . .

> If interested, you may also request a description of how the investgation was conducted along with the business name, address and telephone number of any company we may have contacted for information.

(*Id.* at Exs.) The August 24, 2010 document listed two accounts, in addition to the 1602 Account: a "Chase/Bank One Card Serv" account ending in "5054" and a "Discover Fincl Svc LLC" account ending in "8954." (*Id.*)

-2-

verification that was used by Defendant to verify the 1602 Account.  (2011 Pa. Compl. ¶ 19 &

Ex.)  On January 20, 2011, Defendant responded to Plaintiff's request by reciting its "General

Policy" for investigating disputed information.  (Def.'s Counterclaim ¶ 1 & Ex. A, ECF No. 4.)[4]

On February 1, 2011, Plaintiff wrote Defendant a letter, in which she noted that while Defendant

had provided her with "a generalized description of [] how Transunion usually conducts in[sic]

investigation," she sought "a description of the specific means used by [the] company to verify

the alleged balance for th[e] bill."  (2011 Pa. Compl. ¶ 19 & Ex.; Def.'s Counterclaim Ex. B.)

On February 5, 2011, Defendant sent Plaintiff a document containing the Form Language and,

under "investigation results," listing the 1602 Account as having "new information."  (2011 Pa.

Compl. Ex.)  On February 14, 2011, Defendant wrote Plaintiff a letter, in which it asserted that it

had previously verified the 1602 Account as accurate.  (*Id.* at ¶ 20 & Ex.)  Defendant asserted

that "under the Fair Credit Reporting Act, we consider this dispute frivolous and we will not

reinvestigate the item(s) unless you can provide court papers or a recent, authentic letter from the

creditor(s) that explains what information should be updated."  (*Id.*)  On February 24, 2011,

Plaintiff requested again that Defendant provide the specific method of verification that was used

---

[4] The "General Policy" states, in relevant part:

TransUnion's procedure for investigating disputed information is to contact, by mail, electronic means or telephone, the source of information.  Each source is advised of your dispute and is requested to verify the accuracy and/or completeness of the information provided.

Once the verification responses are received, the disputed information is updated accordingly.  Changes are reflected on the summary of results that is sent to you at the conclusion of our investigation.  If you have any questions regarding the results of the investigation, please contact the creditor(s) directly.

(Def.'s Counterclaim Ex. A.)

in its reinvestigation of the 1602 Account.  (*Id.* at ¶ 19 & Ex.; Def.'s Counterclaim Ex. C.)  On

March 5, 2011, Defendant sent Plaintiff a document containing the Form Language and listing

the 1602 Account as "previously verified."  (*Id.* at ¶¶ 17, 20 & Ex.)  On April 27, 2011, Plaintiff

requested again that Defendant provide the specific method of verification that was used in its

reinvestigation of the 1602 Account.  (Def.'s Answer ¶ 4 & Ex. D.)  On May 6, 2011, Plaintiff

filed a complaint against Defendant in the Court of Common Pleas in Bucks County,

Pennsylvania.  (2011 Pa. Compl.)  The complaint was removed to this Court on May 25, 2011

("Prior Action").  *Phillips v. Transunion, LLC*, No. 11-3376 (filed May 25, 2011), ECF No. 1.

Plaintiff asserted that Defendant breached its duty under the FCRA "to inform Plaintiff as to

what Defendant['s] method of verification was when Defendant conducted such

reinvestigation(s)."  (2011 Pa. Compl. ¶ 21.)  On May 27, 2011, Defendant filed an answer in the

Prior Action.  *Phillips v. Transunion, LLC*, No. 11-3376 (filed May 25, 2011), ECF No. 3.

On July 5, 2011, the parties entered into a Settlement Agreement "to resolve all disputes,

asserted or unasserted, arising out of, or in any way related to any acts, failures to act, omissions,

facts, events, misrepresentations, transactions, occurrence, or other matters set forth, alleged,

embraced by, or otherwise referred to at any time in the Lawsuit."  (Settlement Agreement ¶ B,

Def.'s Answer Ex. F.)[5]  The relevant terms of the Settlement Agreement[6] are as follows:

---

[5] (*See also* Settlement Agreement ¶ 2 ("The Parties agree to settle the Lawsuit, and all other disputes between them that could have been asserted in the Lawsuit against Trans Union . . . .").)

[6] On March 6, 2012, Defendant filed a motion for leave to file the Settlement Agreement under seal.  (ECF Nos. 5-6.)  This motion was granted on March 29, 2012.  (ECF No. 13; *see also* ECF No. 16 (filing of Settlement Agreement as Exhibit F to Defendant's Answer under seal).)

-4-

- The Parties agree to jointly cause to be filed agreed orders and/or stipulations of dismissal of the Lawsuit, *with prejudice*, as settled with each party bearing its own costs and attorneys' fees, all of the claims advanced by Plaintiff against Trans Union.  (Settlement Agreement ¶ 3.)

- Except for the rights and obligations created by this Agreement, Plaintiff . . . hereby releases and forever discharges Trans Union . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature, known or unknown, which Plaintiff had, now has, or may have, on account of, arising out of, based upon or in any manner connected with, any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement, including, but not limited to, any claim for attorneys' fees or costs or any claim based directly or indirectly upon facts, events, transactions or occurrences related, alleged, embraced by or otherwise referred to at any time in the Lawsuit or which could have been asserted in the Lawsuit or which relate in any manner to Plaintiff's credit history information as reported by Trans Union, including but not limited to that information contained in Plaintiff's Trans Union consumer disclosure, dated June 20, 2011, attached hereto as Exhibit A, or the furnishing of such information by Trans Union to any third parties, prior to the execution of this Agreement.  (*Id.* at ¶ 4.)

On June 27, 2011, pursuant to Local Rule 41.1(b), we entered an Order dismissing the Prior

Action with prejudice.  *Phillips v. Transunion, LLC*, No. 11-3376 (filed May 25, 2011), ECF No.

10.  The case was terminated.

## C. Procedural History of This Action

On December 26, 2011, Plaintiff wrote Defendant two separate letters, one with respect

to an account ending in "7913" that had a high balance of $11,203 ("7913 Account") and one

with respect to an account ending in "9418" that had a high balance of $2,427 ("9418 Account").

(Compl. ¶¶ 12, 15, 18 & Exs. A & B.)  Plaintiff asserted that Defendant "placed derogatory

information about the . . . account on [her] credit report."  (*Id.* at Exs. A & B.)  In both letters,

Plaintiff stated that she had "disputed this account in the past," and that Defendant "had

conducted at least two separate re-investigations where the information has been verified and re-

verified." (*Id.*)  Plaintiff requested the method of verification for the reinvestigation. (*Id.*)[7]  On

January 9, 2012, Defendant sent Plaintiff a document reciting its General Policy.  (Compl. ¶ 19 &

Ex. C.)

On February 6, 2012, Plaintiff filed a Complaint against Defendant in the Court of

Common Pleas of Bucks County, Pennsylvania.  (Compl.)  Plaintiff alleges that Defendant

breached its duty under the FCRA "to inform Plaintiff as to what Defendant['s] method of

verification was when Defendant[] conducted such reinvestigation(s)." (*Id.* at ¶ 20; *see also id.*

at ¶¶ 21-23.)  Plaintiff seeks actual damages, statutory damages and attorneys' fees in the amount

of $7,751, as well as damages for emotional distress, to be proved at trial, and punitive damages.

(*Id.* at ¶¶ 25-33, 35.)  In addition, Plaintiff seeks an order directing Defendant to provide a

written description of the method of verification that was used by Defendant to conduct the

reinvestigation of Plaintiff's Account.  (*Id.* at ¶ 34.)  The action was removed to this Court on

February 28, 2012.  (*See* Not. of Removal.)

On March 12, 2012, Defendant filed an Answer to Plaintiff's Complaint and asserted a

Counterclaim.  (Def.'s Answer; Def.'s Counterclaim.)  Defendant asserts that by the terms of the

Settlement Agreement, Defendant was released and discharged "from any and all claims, actions,

causes of action and suits of any kind, known or unknown, that were asserted or could have been

---

[7] The record shows that on July 29, 2011, Defendant sent Plaintiff a document containing
the Form Language and listing the investigation results of several of Plaintiff's accounts,
including a Bank of America account having a high balance of $11,203 and a Bank of America
account having a high balance of $2,427.  (Compl. at Exs. A & B.)  On September 21, 2011,
Defendant sent Plaintiff a document containing the Form Language and listing, underneath its
investigation results, a Bank of America account having a high balance of $2,427.  (*Id.* at Ex. B.)
On November 28, 2011, Defendant sent Plaintiff a document containing the Form Language and
listing, underneath its investigation results, a Bank of America account having a high balance of
$11,203.  (*Id.* at Ex. A.)

asserted in the Lawsuit." (Def.'s Counterclaim ¶ 11.)  Defendant alleges that it fulfilled its duties and obligations under the Settlement Agreement.  (*Id.* at ¶ 12.)  It alleges that by filing the instant Complaint in the Court of Common Pleas, Plaintiff is asserting claims that could have been asserted in the Prior Action and has, therefore, materially breached the Settlement Agreement. (*Id.* at ¶¶ 14-16.)  Defendant claims injury and damages and requests that it be awarded costs and fees incurred in defending the action and prosecuting its Counterclaim, including reasonable attorneys' fees.  (*Id.* at ¶¶ 17-18.)

Plaintiff filed an Answer to Defendant's Counterclaim on March 12, 2012.  (Pl.'s Answer, ECF No. 8.)  While Plaintiff acknowledges that she and Defendant had settled the Prior Action, and that the Settlement Agreement is binding and enforceable, she argues that the subject matter and time frame of the instant lawsuit are "completely different" from the subject matter and time frame of the Prior Action.  (*Id.* at ¶¶ 1-16.)

On March 30, 2012, Defendant filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c).  (Def.'s Mot., ECF No. 14; *see also* Def.'s Mem., ECF No. 15.)  On April 12, 2012, Plaintiff filed a Response in opposition to the Motion (Pl.'s Resp., ECF No. 17) and a memorandum in support thereof (Pl.'s Mem., ECF No. 18).

## II.    LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The court evaluates a Rule 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  *See Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the

complaint but also the answer and written instruments attached to the pleadings." *Sprague v. Neil*, No. 05-1605, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2004)).

Under this standard, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (cited with approval in *Twombly*, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g.*, *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

## III.   DISCUSSION

### A.   Preclusion by Terms of Settlement Agreement and Res Judicata

Defendant argues that Plaintiff's FCRA claims concerning the 7913 and 9418 Accounts

are barred by res judicata since Plaintiff raised these claims in the Prior Action, which involved a description of Defendant's reinvestigation procedure that is "substantively identical" to the description that is the subject of her current claim.  (Def.'s Mot. ¶ A; *see also* Def.'s Mem. 5.) Defendant also argues that Plaintiff's claims are precluded by the terms of the Settlement Agreement. (Def.'s Mot. ¶ B; *see also* Def.'s Mem. 8-9.)

Plaintiff counters that the "instant lawsuit has absolutely nothing to do with the subject matter of the [Prior Action]."  (Pl.'s Answer ¶ 16.)  She asserts that the events giving rise to the instant action did not arise until after the parties had entered into the Settlement Agreement.  (*Id.*) Moreover, she contends that the Settlement Agreement does not bar Plaintiff's future claims against Defendant for subsequent violations of the FCRA.  (Pl.'s Mem. 2 at ¶ c.)  She explains that "[t]he [Settlement Agreement] did not permit Defendant to continually violate FCRA by refusing to disclose it's[sic] MOV to Plaintiff on separate unrelated accounts in all future dealings with Plaintiff."  (*Id.* at 5.)

### 1.  Preclusion by Terms of Settlement Agreement

A contractual release from litigation is an affirmative defense to a claim against any party to that release.  That defense is generally asserted by motion for judgment on the pleadings or summary judgment.  *See, e.g.*, *Straight Arrow Prods. v. Conversion Concepts, Inc.*, No. 01-221, 2001 WL 1530637, at *2 (E.D. Pa. Dec. 3, 2001).  If the moving party clearly establishes that there are no material issues of fact, a contractual release from a claim can be a complete defense to the pleadings.  *Id.*  Releases are construed pursuant to the traditional principles of contract law, and a release that is not obtained by fraud, duress or mutual mistake is binding between the parties. *Jordan v. SmithKline Beecham, Inc.*, 958 F. Supp. 1012, 1020 (E.D. Pa. 1997); *Black v.*

*Jamison*, 913 A.2d 313, 318 (Pa. Commw. Ct. 2006); *Davis ex. rel. v. Gov't Emps. Ins. Co.*, 775 A.2d 871, 875 (Pa. Super. Ct. 2001).  "The fundamental rule in interpreting a contract is to ascertain and give effect to the intent of the contracting parties . . . . The intent of the parties to a written agreement is embodied in the writing itself . . . . When contractual language is clear and unequivocal, its meaning must be determined by its contents alone." *Crawford Cent. Sch. Dist. v. Commonwealth of Pa.*, 888 A.2d 616, 623 (Pa. 2005) (citation omitted).

  Defendant contends that the Settlement Agreement precludes claims concerning the 7913 and 9418 Accounts since the Agreement released and discharged Defendant from any claim related to Plaintiff's credit history information, as reflected on Plaintiff's consumer disclosure, which was incorporated into the Settlement Agreement as Exhibit A.  (Def.'s Mem. 8.)  After a careful review of the Settlement Agreement, the Exhibit A attached thereto, and the Exhibits to Plaintiff's Complaint, it is clear that the Settlement Agreement precludes the instant claims.  The Settlement Agreement here sought "to resolve all disputes, asserted or unasserted, arising out of, or in any way related to any acts, failures to act, omissions, facts, events, misrepresentations, transactions, occurrence, or other matters set forth, alleged, embraced by, or otherwise referred to at any time in the Lawsuit."  (Settlement Agreement ¶ B.)  Specifically, the Agreement provided, in relevant part, that:

> Plaintiff . . . hereby releases and forever discharges Trans Union . . . from *any and all claims, demands, damages, actions, causes of action or suits of any kind or nature, known or unknown, which Plaintiff had, now has, or may have*, on account of, arising out of, based upon or *in any manner connected with, any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement, including,* but not limited to, any claim for attorneys' fees or costs *or any claim* based directly or indirectly upon facts, events, transactions or occurrences related, alleged, embraced by or otherwise referred to at any time in the Lawsuit or *which relate in any manner to*

> *Plaintiff's credit history information as reported by Trans Union, including but not limited to that information contained in Plaintiff's Trans Union consumer disclosure, dated June 20, 2011, attached hereto as Exhibit A,* or the furnishing of such information by Trans Union to any third parties, prior to the execution of this Agreement.

(*Id.* at ¶ 4 (emphasis added).)  The 7913 Account, a Bank of America account, has a high balance of $11,203.  (Compl. Ex. A.)  The 9418 Account, a Bank of America account, has a high balance of $2,427.  (Compl. Ex. B.)  Exhibit A of the Settlement Agreement lists among its "Adverse Accounts" the Bank of America account showing a high balance of $11,203 and the Bank of America account showing a high balance of $2,427.  (Settlement Agreement Ex. A.)  "[A] party cannot evade the clear language of [a] release by contending that he did not subjectively intend to release the claim in question."  *Jordan*, 958 F. Supp. at 1019-20 (citing *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989)) (internal quotation marks omitted).  Plaintiff cannot avoid the effect of the Settlement Agreement, which releases Defendant from claims "which relate in any manner to Plaintiff's credit history information as reported by Trans Union, including but not limited to that information contained in Plaintiff's Trans Union consumer disclosure, dated June 20, 2011, attached hereto as Exhibit A."  (Settlement Agreement ¶ 4.)  The Settlement Agreement is clear that the parties intended to release Defendant from any future claims related to the 7913 and 9418 Accounts, whether known or unknown by Plaintiff.  Accordingly, Plaintiff's claims concerning the 7913 and 9418 Accounts are precluded by the terms of the Settlement Agreement.

     2.     *Res Judicata*

     "Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."  *Duhaney v.*

*Att'y Gen. of the United States*, 621 F.3d 340, 347 (3d Cir. 2010).  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009).  "The purpose of claim preclusion is to avoid piecemeal litigation of claims arising from the same events." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d. Cir. 1999).  The party seeking to invoke claim preclusion must show that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *Duhaney*, 621 F.3d at 347 (citation omitted).

### a)      Final Judgment on the Merits in Prior Action

"[A] dismissal of an action with prejudice is 'a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties.'"  *Dorfsman v. Law Sch. Admission Council, Inc.*, No. 00-0306, 2001 WL 1754726, at *1 (E.D. Pa. Nov. 28, 2001) (quoting *Selas Corp. of Am. v. Wilshire Oil Co.*, 57 F.R.D. 3, 8 (E.D. Pa. 1974)); *see also Hirschensohn v. West*, No. 92-1990, 1993 WL 813514, at * 2 (D.V.I. Nov. 29, 1993) (explaining that a voluntary "dismissal with prejudice usually operates as a final adjudication on the merits").

Plaintiff voluntarily, and with Defendant's consent, dismissed the Prior Action with prejudice.  On June 27, 2011, pursuant to Local Rule 41.1(b), we entered an Order dismissing the Prior Action with prejudice.  The case was terminated.  *Phillips v. Transunion, LLC*, No. 11-3376 (filed May 25, 2011), ECF No. 10.  A voluntary dismissal with prejudice operates as a final judgment on the merits.  *Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 WL 4702382, at *4 (E.D. Pa. Nov. 12, 2010); *see also Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x

36, 38 (3d Cir. 2008) ("Judicially approved settlement agreements are considered final judgments

on the merits for the purposes of claim preclusion."); *Gambocz v. Yelencsics*, 468 F.2d 837, 840

(3d Cir. 1972) (holding that "[d]ismissal with prejudice constitutes an adjudication of the merits

as fully and completely as if the order had been entered after trial") (citing *Lawlor v. Nat'l Screen*

*Serv. Corp.*, 349 U.S. 322, 327 (1955)); *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560,

564 (3d Cir. 1976) (same) (citing *Gambocz*, 468 F.2d at 840).  Accordingly, the first factor has

been met.

### b)      Same Parties or Their Privies

Neither party disputes that the named parties in the instant lawsuit are identical to the

named parties in the Prior Action.  Accordingly, the second factor has been met.

### c)      Subsequent Suit Based on Same Cause of Action

The parties dispute whether this third prong has been met.  To determine whether two

lawsuits are based on the same cause of action, courts look not toward the legal theories invoked,

but rather toward the "essential similarity of the underlying events giving rise to the various legal

claims." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Davis v.*

*U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)).  Specifically, courts look at (1) whether the

acts complained of and demand for relief are the same, (2) whether the material facts alleged are

the same, (3) whether the theory of recovery is the same, and (4) whether witnesses and

documentation necessary to prove the allegations are the same.  *Id.*; *United States v. Athlone*

*Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984); *Hankin Family P'ship v. Upper Merion Twp.*, No.

01-1622, 2012 WL 43599, at *16 (E.D. Pa. Jan. 6, 2012).  This Third Circuit approach reflects

the "'present trend . . . of requiring that a plaintiff present in one suit all the claims for relief that

he may have arising out of the same transaction or occurrence.'" *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (internal citations omitted).

Defendant argues that Plaintiff's claims in the instant action are identical to her claims in the Prior Action since:  (1) in both actions, the claims are based upon Defendant's alleged failure to provide Plaintiff with a specific method of verification for its reinvestigation; (2) in both actions, the claims are based on Defendant's alleged breach of its duty under the FCRA; and (3) both actions require the same evidence in order for Plaintiff to prevail.  (Def.'s Mem. 6-7.) Defendant asserts that the fact that the actions entail different accounts "is of no import, as the only facts material to Plaintiff's claim are based upon [Defendant's] response to Plaintiff's request, not the underlying dispute itself."  (Def.'s Mem. 7 (original emphasis).)  Because the description of procedures in the Prior Action is "substantively identical" to that of the instant action, Defendant argues, the material facts are identical.  (*Id.*)  Alternatively, Defendant contends that even if the claims are not identical, res judicata bars this action since Plaintiff could have asserted the instant claims in the Prior Action.  (*Id.*)

Plaintiff argues that the Prior Action pertains to Defendant's alleged failure to disclose the method of reinvestigation for the 1602 Account, whereas the instant action relates to Defendant's alleged failure to disclose the method of reinvestigation for the 7913 and 9418 Accounts.  (Pl.'s Answer ¶ 15.)  Plaintiff asserts that the events giving rise to the instant action occurred between December 2011 and January 2012 and that the FCRA violation in the instant action accrued in January 2012.  She argues that these dates occurred after the Settlement Agreement, which was entered into by the parties on July 5, 2011.  (*Id.*)  Thus, Plaintiff argues, the instant claims are "new and unique," stem "from events that post-date the prior settlement by

-14-

several months," and could not have been raised in the Prior Action.  (Pl.'s Mem. 1-2 at ¶ a.)

It is true that "[r]es judicata applies . . . only to claims arising prior to the entry of judgment.  It does not bar claims arising *subsequent to* the entry of judgment and which did not then exist or could not have been sued upon in the prior action."  *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) (citing *Lawlor*, 349 U.S. at 329) (original emphasis); *see also Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1430 (3d Cir. 1994) (citing same); *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 219 (E.D. Pa. 2010) ("The entire point of claim preclusion is to prevent future actions on grounds that *could have been raised* in an earlier action, not to prevent future actions on grounds that *did not yet exist* (and therefore could *not* have been raised) in an earlier action.") (original emphasis).  However, "[t]he express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement."  *Toscano*, 288 F. App'x at 38 (citing *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004)).  As discussed *supra*, at Section III.A.1, the disputes involving the 7913 and 9418 Accounts existed prior to the parties executing the Settlement Agreement.  Indeed, these Accounts were among *the very subjects* of the Settlement Agreement.  (*See* Settlement Agreement Ex. A.)  Moreover, in both the instant action and the Prior Action, the acts complained of and demand for relief are substantially the same (*compare* 2011 Pa. Compl. ¶¶ 21-24, 26-33, 35-36, with Compl. ¶¶ 20-23, 25-33, 35), the theory of recovery is the same (*compare* 2011 Pa. Compl. ¶ 21, with Compl. ¶¶ 20), and the material facts and documentation involved are substantially the same.  Under these circumstances, the instant claims involving the 7913 and 9418 Accounts cannot be said to be "new disputes" for purposes of res judicata.  *See Toscano*, 288 F. App'x at 38 ("Additionally, the identity of the cause of

action refers not only to claims actually litigated, but to those that could have been litigated in the earlier suit if they arise from the same underlying transaction or events.") (citation omitted); *Lubrizol Corp.*, 929 F.2d at 964 ("Claim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action.") (citing *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988)) (internal quotation marks omitted).[8]   Accordingly, judgment will be entered in favor of Defendant on the claims involving the 7913 and 9418 Accounts.

### B.      Breach of Settlement Agreement Counterclaim

In its Counterclaim, Defendant alleges that Plaintiff has materially breached the Settlement Agreement entered into on July 5, 2011.  Defendant alleges that Plaintiff has breached the Agreement by filing the instant Complaint and "asserting a claim that was or could have been asserted in the prior lawsuit" after having released Defendant from the Prior Action.  (Def.'s Mot. ¶ C; *see also* Def.'s Counterclaim ¶ 16; Def.'s Mem. 9-10.)  Defendant seeks damages to include attorneys' fees and costs incurred by Defendant in responding to Plaintiff's Complaint and in enforcing the Settlement Agreement.  (Def.'s Counterclaim ¶¶ 17-18.)  Defendant alleges that the Court has jurisdiction over its Counterclaim, pursuant to 28 U.S.C. § 1367.  (*Id.* at ¶ 18.)

The parties voluntarily settled the Prior Action on July 5, 2011.  (Settlement Agreement.) On June 27, 2011, pursuant to Local Rule 41.1(b), we entered an Order dismissing the Prior

---

[8] Res judicata can apply even if a plaintiff was unaware that a claim existed at the time of the prior suit, so long as that claim did, in fact, exist at the time of the prior suit and there was no fraud.  *Waris v. Mackey*, No. 09-1103, 2009 WL 4884204, at *7 (E.D. Pa. Dec. 15, 2009) (citing *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)); *see also Bieg v. Hovnanian Enters., Inc.*, No. 98-5528, 1999 WL 1018578, at *4 (E.D. Pa. Nov. 10, 1999) ("The question, however, is not when plaintiff pursued a right but when the right arose.").  Here, the record shows that the claims concerning the 7913 and 9418 Accounts did exist at the time of the Prior Action.

Action with prejudice.[9]  *Phillips v. Transunion, LLC*, No. 11-3376 (filed May 25, 2011), ECF
No. 10.  The Order did not state that dismissal of the Prior Action was pursuant to the terms and
conditions of the Settlement Agreement.  *See id.*  The Order did not state that the Court would
retain jurisdiction to enforce the terms of the Settlement Agreement.  *See id.*  Neither party
requested that the Court preside over future disputes arising from, or related to, the Prior Action.

The instant matter was removed to this Court by Defendant.  (Not. of Removal.)  Since
Plaintiff's claims alleged violations of the FCRA, a federal statute, we had jurisdiction over
Plaintiff's claims.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of
all civil actions arising under the Constitution, laws, or treaties of the United States."); *see also*
*Sheldon v. Experian Info. Sol'ns, Inc.*, No. 08-5193, 2010 WL 3768362, at *1 (E.D. Pa. Sept. 28,
2010) (finding that federal question jurisdiction existed for FCRA claim).  However, for the
reasons discussed above, we dismissed the instant FCRA claims.  As a result, this Court lacks
subject matter jurisdiction over Defendant's Counterclaim, which asserts breach of contract.

District courts may "have supplemental jurisdiction over all other claims that are so
related to claims in the action within such original jurisdiction that they form part of the same
case or controversy . . . ."  28 U.S.C. § 1367(a).  However, a district court may decline to exercise
supplemental jurisdiction over a claim where the court has dismissed all claims over which it had
original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Third Circuit has stated that "where the claim
over which the district court has original jurisdiction is dismissed before trial, the district court

_____

[9] The Order stated that "it having been reported that the above captioned action has been
settled and upon Order of the Court pursuant to the provisions of Rule 41.1(b) of the Local Rules
. . . it is **ORDERED** that the above captioned action is **DISMISSED** with prejudice, pursuant to
agreement of counsel without costs."

-17-

must decline to decide the pendent state claims unless considerations of judicial economy,

convenience, and fairness to the parties provide an affirmative justification for doing so." *Bright*

*v. Westmoreland Cnty.*, 443 F.3d 276 (3d Cir. 2006) (quoting *Borough of West Mifflin v.*

*Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (internal quotation marks omitted).  None of these

considerations favor retaining jurisdiction in the instant matter.  This case has not yet progressed

beyond the motion-for-judgment-on-the-pleadings stage.  The court has not expended a

significant amount of judicial resources.  Any discovery that might have been conducted by the

parties will have been preliminary, at most, and equally relevant to any further proceeding in

state court.  *See Zokaites v. Equifax Info. Servs., LLC*, No. 11-981, 2012 WL 993269, at *4

(W.D. Pa. Mar. 22, 2012) (remanding plaintiff's remaining state law claims to Court of Common

Pleas, where plaintiff could not state a claim for relief under the FCRA and considerations of

judicial economy, convenience and fairness did not justify exercise of supplemental jurisdiction);

*Parker v. Commonwealth Fin. Servs., Inc.*, No. 08-372, 2008 WL 2246440, at *4 (M.D. Pa. May

30, 2008) (granting motion to dismiss state law claims since FCRA claim was dismissed with

prejudice and "[i]f the federal claims in a case are dismissed prior to trial, the state claims should

be dismissed as well") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Moreover, there is no indication that the parties or the Court intended for us to retain jurisdiction

to enforce the Settlement Agreement.  *See Coppola v. Travelers Indem. Co.*, 321 F. App'x 170,

172-73 (3d Cir. 2009) (noting that district court lacks jurisdiction to address dispute related to

settlement agreement where dismissal order "did not recite the terms of the settlement, nor did it

indicate the court's intent to retain jurisdiction over the settlement after the case's dismissal");

*Shaffer v. GTE North, Inc.*, 284 F.3d 500, 504 (3d Cir. 2002) ("Because neither condition for the

-18-

exercise of ancillary jurisdiction as identified in *Kokkonen* was met here, we hold that the district

court lacked subject matter jurisdiction to rule on GTE's motion to enforce the settlement

agreement."); *In re Phar-Mor, Inc. Secs. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) (vacating

district court's order granting a motion to enforce settlement and holding that the district court

lacked jurisdiction because the order dismissing the case did not incorporate the terms of the

settlement agreement or retain jurisdiction to address settlement); *Rudinger v. Ins. Data*

*Processing, Inc.*, 816 F. Supp. 371, 372-73 (E.D. Pa. 1993) (dismissing motion to enforce

settlement agreement for lack of subject matter jurisdiction since court did not intend to retain

jurisdiction when dismissing the prior matter); *see also Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 381 (1994) ("The judge's mere awareness and approval of the terms of the

settlement agreement do not suffice to make them part of his order.").[10]   Accordingly,

Defendant's Counterclaim is remanded to the Court of Common Pleas of Bucks County,

Pennsylvania.

---

[10] In *Rudinger v. Insurance Data Processing, Inc.*, plaintiff sued his former employers for fraud, securities fraud and breach of contract.  816 F. Supp. at 372.  The parties settled.  Plaintiff later moved to enforce the settlement agreement.  The court dismissed plaintiff's motion for lack of subject matter jurisdiction.  *Id.*  The court reasoned that "nothing either in those orders [dismissing the claims] or during the court colloquy where the parties' stipulation was read [] suggest[ed] that [the court] would keep jurisdiction."  *Id.* at 373.  Furthermore, "the parties' stipulation said nothing about [the court's] dismissing the case 'pursuant to the terms and conditions' in their agreement.  Nor did the stipulation or either party ask that [the court] preside over future disputes."  *Id.*  Accordingly, the court in *Rudinger* held that it could not hear Plaintiff's motion to enforce the agreement.  *Id.*

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion is granted.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**
